**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 10 2009

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 05-74408 |
| | ) | |
| Thomas Jefferson Armstrong and | ) | Chapter 7 |
| Barbara Ellen Armstrong, | ) | |
| | ) | Adv. Pro. No. 06-3062 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Kenneth Long, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Thomas Jefferson Armstrong, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on a Motion for Summary Judgment [Doc. # 82] filed by Defendants Thomas Jefferson Armstrong and Barbara Ellen Armstrong, Debtors in the underlying Chapter 7 case, Plaintiff's response [Doc. # 86], and Defendants' reply [Doc. #87]. In his complaint, Plaintiff seeks a determination that a debt allegedly owed to him by Debtors is nondischargeable as a debt

obtained by false representation and fraud. Thus, although the Bankruptcy Code section is not specifically set forth in his complaint, Plaintiff seeks a determination that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I). For the reasons that follow, Defendants' motion will be granted.

## PROCEDURAL BACKGROUND

This adversary proceeding was commenced on January 27, 2006, by the filing of a complaint purportedly signed and filed pro se by Plaintiff. The court later learned that Plaintiff had not signed the complaint. Instead it had been signed by a debt collector hired by Plaintiff to collect the debt allegedly owed by Defendants. On December 6, 2006, after Plaintiff had obtained counsel, the court ordered Plaintiff to file a copy of the original complaint bearing his actual signature, absent which the complaint would be treated as stricken from the record. Instead, Plaintiff signed and filed the original Adversary Proceeding Cover Sheet and the last page only of the original complaint, which contains only two of seventeen paragraphs of the complaint. At no time did Plaintiff seek to amend the complaint. The deadline for discovery having passed, Defendants now move for summary judgment on the complaint, which the court addresses to the extent a proper complaint is even before the court,

## FACTUAL BACKGROUND

The following facts, many of which are disputed by Defendants, are set forth by Plaintiff in his deposition testimony. Plaintiff and Thomas Armstrong ("Armstrong") met in or about 1996 in the course of their respective real estate investment businesses. In 2001, Armstrong asked Plaintiff to loan him money for a real estate investment. Between February 16, 2001, and May 3, 2002, he loaned Thomas and Barbara Armstrong money on at least seven different occasions for a total amount loaned of $108,000. [Def. Ex. A, Pl. Depo. pp. 10, 14, 17-20]. According to Plaintiff, Armstrong initially agreed to pay him monthly interest at a rate of twenty percent; however, after September 11, 2001, Plaintiff agreed to decrease the monthly rate to ten percent. [*Id.* at 23-24]. At the time of each loan transaction, Armstrong wrote a check made payable to Plaintiff for the amount of the loan, which the parties intended Plaintiff to hold as security

for payment of the amount loaned. [*Id.* at 15, 19, 51]. There is no other writing memorializing the loan transaction. [*Id.* at 55]. Plaintiff testified that Armstrong made "semi-regular" payments on the debt owed him. [*Id.* at 21]. Although Plaintiff has no record of those payments, he testified that he is "in agreement" that Armstrong has paid him a total of $59,900. [*Id.* at 23].

In Plaintiff's complaint, he alleges "at the time of the exchange of funds and the issue of the checks, that the Defendants were officers, director, [or] owners of R and A, LTD of Marion, Ohio," that Plaintiff believed the funds "were in fact loaned to R and A, LTD" and were "not a personal loan to Thomas Jefferson Armstrong or Barbara Ellen Armstrong," that the funds loaned "were to be used for [the] purpose of profit and rehabilitating R and A, LTD," and that "[t]herefore Plaintiff claims in this complaint false misrepresentation and fraud on the initial transfer of funds and the issuing of the checks listed in this complaint." [Doc. # 1, Complaint ¶¶ 11, 13 - 15]. Plaintiff further alleges that Armstrong wrote him seven checks that were written on a closed account. [*Id.* ¶¶ 5-9]. Finally, Plaintiff alleges that he "relied on the statements and documents signed by Thomas Jefferson Armstrong as being true and that R and A LTD would in fact be taking care of the loans." [*Id.* at ¶ 16]. Notwithstanding these allegations, Plaintiff testified in his deposition that he had no business dealings with R and A, Ltd and that he loaned the funds to Defendants "personally." [Def. Ex. A, Pl. Depo., p. 13-14]. He testified that the allegations to the contrary in paragraphs 11, 13, 14, and 16 of the Complaint are incorrect. [*Id.* at 13-15].

Plaintiff further testified that Armstrong made false representations to him by not paying the loan off and by closing the bank account on which the checks "securing" the loans were written. [*Id.* at 12-13]. The bank account was not closed until sometime after May 3, 2002. Plaintiff testified that "things were great, or at least tolerable, as far as payment up until our business dealing fell apart. And then [Armstrong] immediately as in the very next morning, closed the account on the checks that were used for security. . . ." [*Id.* at 49]. Plaintiff explained that the cause of the business relationship falling apart was an argument they had regarding an unrelated business deal with a third party. [*Id.*]. Plaintiff testified that because he would not agree to change the terms of the agreement relating to that business deal, "in retaliation, Armstrong chose to stop paying [Plaintiff] the money he owed [him]. . . ." [*Id.*].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most

3

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

## II. 11 U.S.C. § 523(a)(2)(A)

Under § 523(a)(2)(A), a debt is excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In order to except a debt from discharge under this section due to false pretense or false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money or services through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). A debtor's intent to defraud a creditor under § 523(a)(2)(A) is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.*; *Rembert*, 141 F.3d at 281-82. "If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *ITT Fin'l Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991).

For purposes of § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002)(quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986)).

Initially, the court notes that a plaintiff is required to plead the circumstances constituting an alleged fraud with particularity. Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b). In this case, Plaintiff alleges no facts and has offered no evidence that Barbara Armstrong ever made any representation to him with respect to

4

the loans at issue. Rather, Plaintiff alleges that Armstrong wrote checks on a closed account that were made payable to Plaintiff, that Plaintiff loaned funds to R and A, Ltd. to be used "to rehabilitate" the company and that he "relied on statements and documents signed by Thomas Jefferson Armstrong as being true and that R and A, Ltd would in fact be taking care of the loans." [Doc. # 1, Complaint ¶ 16]. However, Plaintiff's own deposition testimony refutes these allegations.

First, Plaintiff testified that his allegations in the complaint regarding R and A, Ltd., are incorrect and that he had no dealings with that company. Next, Plaintiff testified, and it is otherwise undisputed, that the bank account at issue was not closed until after Plaintiff's argument with Armstrong, which occurred well after the checks were written. Nevertheless, Plaintiff argues that closing the account on which the checks were written constitutes a willful misrepresentation. To be actionable under § 523(a)(2)(A), however, any misrepresentation must have been made at or before the time the debt owed to Plaintiff was incurred. *See Tusco Grocers, Inc. v. Coatney (In re Coatney)*, 185 B.R. 546, 550 (Bankr. N.D. Ohio 1995). Moreover, courts have found that passing a bad check, without more, does not constitute a false statement as "a check is not a factual assertion." *Williams v. United States*, 458 U.S. 279 (1982); *see Stewart v. East Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortgage Co.)*, 25 F.3d 338 (6th Cir. 1994) (stating "since a check does not make any representation, it cannot make any *mis*representation"); *Busch, Inc. v. Grilliot (In re Grilliot)*, 293 B.R. 725, 730 (Bankr. N.D. Ohio 2002).

To the extent that the Complaint can be construed to allege that Armstrong never intended to repay the funds loaned by Plaintiff, he offers no evidence from which one could so conclude. *See Stifter v. Orsine (In re Orsine),* 254 B.R. 184, 188 (Bankr. N.D. Ohio 2000) (stating that "any debtor who does not intend to perform a contract from its inception has knowingly made a false representation"). In fact, Plaintiff testified in his deposition that Armstrong did in fact repay $59,900, *see In re Grilliot*, 293 B.R. at 730, and that, with respect to such payments, "things were great, or at least tolerable" until his argument with Armstrong. [Def. Ex. A, Pl. Depo. p. 49]. According to Plaintiff, Armstrong stopped making payments, not because he never intended to make payments and make good on the checks in the first place, but in retaliation for Plaintiff's refusal to agree to change the terms of a later unrelated agreement. However, a mere breach of a promise to pay will not support a finding of fraud. *In re Orsine,* 254 B.R. at 188 (citing *ITT Fin'l Servs. v. Hulbert (In re Hulbert),* 150 B.R. 169, 175 (Bankr. S.D. Tex. 1993) (explaining that if a debtor has the intent to repay a loan at the time it is made, but later changes his mind and breaches the contract, no "fraud" exists within the meaning of the fraud exception to discharge)).

In light of the foregoing, the court finds that Defendants have met their initial burden under Rule 56 and that Plaintiff has failed to set forth any facts in response from which a reasonable factfinder could find

that a material misrepresentation was made by either Defendant at the times the debt(s) to Plaintiff were incurred. Thus, while the parties disagree as to certain facts (*e.g.*, whether there is still any amount owed and the applicable interest rate(s)), the court finds that there are no genuine issues as to any fact material to deciding the legal issues raised by the complaint and that Defendants are entitled to judgment in their favor as a matter of law.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 82] be, and hereby is **GRANTED.** A separate judgment in accordance with this Memorandum of Decision and Order will be entered.

6

06-03062-maw    Doc 88    FILED 08/10/09    ENTERED 08/10/09 16:38:01    Page 6 of 6